COMMONWEALTH *VS.* FRED C. VELEZ.

No. 07-P-1960.

Middlesex. March 4, 2010. - July 16, 2010.

Present: MILLS, GREEN, & KATZMANN, JJ.

*Practice, Criminal,* Motion to suppress, Disclosure of identity of informer, Assistance of counsel, Questioning of witness by judge. *Search and Seizure,* Probable cause, Warrant, Affidavit, Arrest, Automobile. *Constitutional Law,* Search and seizure, Assistance of counsel. *Controlled Substances.*

A trial court judge did not err in denying a criminal defendant's pretrial motion to suppress evidence obtained by searches of his automobile and apartment, where the affidavit in support of the application for the search warrant of the apartment furnished probable cause for its issuance, given that the affidavit contained descriptions of three controlled purchases that all occurred at the apartment under police supervision, as well as information provided by a confidential informant with established veracity and basis of knowledge [272-274]; where the controlled purchases provided a basis, independent of the search warrant, for the stop and arrest of the defendant while in his automobile one and one-half blocks from the apartment [274]; and where the search of the automobile was justified by the smell of burnt marijuana, detected by one trooper as he approached the automobile, which provided probable cause to believe that contraband was inside [274-275].

A criminal defendant failed to demonstrate that circumstances warranted the disclosure at his trial of the identity of a confidential Commonwealth informant who acted only as a tipster and not as an active participant in the crimes charged. [275-276]

A criminal defendant alleging ineffective assistance of trial counsel was not entitled to a presumption of prejudice by virtue of certain remarks by counsel in which he conceded the defendant's guilt to less serious offenses, where the remarks, although improper, did not result in a complete failure to subject the prosecution's case to meaningful adversarial testing [276-278]; moreover, counsel's actions, which also included pursing a strategy of "jury nullification" during a bench trial and using the trial in an extended effort to seek leniency in sentencing, did not, in the circumstances, result in ineffective assistance [278].

At the trial of a criminal complaint charging trafficking in cocaine, the judge's questions to a Commonwealth witness, which simply clarified the representative sampling procedure the witness (a chemist) had employed, were proper and did not impermissibly aid the Commonwealth in meeting its burden of proof. [278-279]

INDICTMENT found and returned in the Superior Court Department on December 15, 2005.

A pretrial motion to suppress evidence was heard by *Thomas A. Connors,* J.; the case was heard by *Stephen E. Neel,* J., and a motion for a new trial, filed on April 9, 2008, was heard by him.

*Carlene A. Pennell* for the defendant.

*Fawn D. Balliro Andersen,* Assistant District Attorney, for the Commonwealth.

MILLS, J. The defendant was indicted on a charge of trafficking in cocaine, in violation of G. L. c. 94C, § 32E(*b*)(2).[1] After hearing, a judge denied the defendant's motion to suppress evidence and seeking disclosure of the identity of a confidential informant. Trial was jury-waived before a different judge, who found the defendant guilty.[2]

In this consolidated appeal from his conviction and from the trial judge's denial of his new trial motion, the defendant argues that (1) his motion to suppress evidence obtained by searches of his automobile and apartment was erroneously denied and there was no probable cause for his warrantless arrest; (2) the identity of the informant should have been disclosed; (3) he received ineffective assistance of counsel; (4) the judge improperly questioned one of the Commonwealth's witnesses; and (5) these errors cumulatively require reversal. We affirm.

*Background.* We summarize the relevant facts from the judge's findings on the motion to suppress, supplementing them where appropriate by uncontroverted testimony from the suppression hearing. See *Commonwealth* v. *Washington,* 449 Mass. 476, 477 (2007). We save for later discussion the facts pertinent to the issues arising at trial.

The defendant was suspected of selling drugs from his

---

[1]The grand jury also indicted the defendant on charges of possession of marijuana with intent to distribute, G. L. c. 94C, § 32C(*a*); three counts of possession of a class E drug with intent to distribute, G. L. c. 94C, § 32D(*a*); and possession of a hypodermic needle, G. L. c. 94C, §§ 27, 38.

[2]Prior to trial, the Commonwealth filed a notice of nolle prosequi on the charge of possession of a hypodermic needle. The judge found the defendant guilty on the marijuana charge, but that conviction was placed on file and is not before us. The judge found the defendant not guilty on the charges alleging possession of a class E drug with intent to distribute.

residence at 116 Perkins Street, apartment 3, in Somerville. On September 1, 2005, Trooper Steven Racki secured a warrant to search that apartment, and he and Trooper Scott Holland took positions near the apartment in anticipation of executing the warrant. At approximately 2:30 P.M., the defendant and a female were observed leaving the apartment while carrying several bags. They entered an automobile and drove away. Trooper Fallon, who was in a marked State police cruiser, stopped the defendant's car about one and one-half blocks later. Trooper Holland positioned his unmarked vehicle behind Trooper Fallon's cruiser, and as Holland approached the car, the defendant was exiting at Fallon's direction and Fallon stated that he "smelled weed in the car." Trooper Holland, an experienced narcotics officer trained in the identification of marijuana by sight and smell, walked to the driver's window and detected an odor of burnt marijuana emanating from the car's interior. Opening the door, he observed marijuana "roaches" in the ashtray and, in the center console, a clear plastic bag containing marijuana. A further search of the car revealed a leather bag behind the driver's seat, in which were found clear plastic bags with a "white rock powder" that Trooper Holland believed to be cocaine. The defendant was transported to the police station for booking and the troopers returned to the apartment to execute the warrant, discovering narcotics, hypodermic needles, cash, personal papers, and other items.

*Discussion.* 1. *Motion to suppress.* "In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error, and conduct an independent review of the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Stephens*, 451 Mass. 370, 381 (2008).

a. *The search of the defendant's apartment.* The defendant argues that the search warrant was not supported by probable cause. "To establish probable cause to search, the facts contained in an affidavit, and reasonable inferences that may be drawn from them, must be sufficient for the magistrate to conclude 'that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues.' " *Commonwealth* v. *Lopes*, 455 Mass. 147, 164-165 (2009), quoting from *Commonwealth* v. *Anthony*, 451 Mass. 59, 68 (2008).

The sufficiency of a search warrant application to establish probable cause is judged solely within the four corners of the affidavit. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 813 (2009). In assessing the contribution of a confidential informant's tips to the probable cause analysis, we employ the familiar tests of the informant's veracity and basis of knowledge. See *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985). We briefly summarize pertinent facts as set forth in the affidavit.

In January, 2005, Trooper Racki spoke with a confidential informant he referred to by the pseudonym "Mary." She had provided information to police in the past that led to an arrest and seizure of drugs; most recently, three months prior to the affidavit. Mary stated that she knew of an individual named "Freddy Velez" who sold cocaine and marijuana. She provided a detailed physical description, offered his address and cellular telephone number, and stated that he sold drugs from his apartment and also made deliveries. Police investigation confirmed the defendant's name, description, residency at the given address, and use of the given telephone number. During the month preceding the defendant's arrest, Mary, under police supervision, made three controlled purchases of cocaine at the defendant's apartment. The third buy occurred within seventy-two hours of the application for the search warrant, which Trooper Racki submitted on the same day as the defendant's arrest.

We conclude that, in this case, Mary's veracity was established by the fact that she had previously given information which led to at least one arrest and seizure of contraband. See *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 46 (1991), and cases cited. Any weakness in her veracity, or in her basis of knowledge — if the latter was not fully established by her statements that the defendant had drugs in his apartment at a certain address and used a certain telephone number, and sold $50 quantities of cocaine in small glassine bags — was cured by the corroborative effect of the three controlled buys at that location. See *Commonwealth* v. *Blake*, 413 Mass. 823, 828-829 (1992).

The controlled buys in this case followed the familiar protocol recited in multiple cases. See, e.g., *Commonwealth* v. *Desper*, 419 Mass. 163, 168 (1994), and cases cited. The facts that the defendant's residence was located within a three-unit dwelling,

and that the police did not observe which unit the informant entered, do not render the search warrant invalid. See *Commonwealth* v. *Warren*, 418 Mass. 86, 90 (1994) ("police [are] not required to risk disclosure of their surveillance by accompanying the informant" to an apartment within a multi-unit dwelling). Additionally, the seventy-two-hour delay between the third controlled buy and the application for the search warrant is not troubling in these circumstances because the other information in the affidavit, including the two other buys, established a continuing pattern of conduct in a fixed location over a comparatively longer time frame. See *Commonwealth* v. *Rice*, 47 Mass. App. Ct. 586, 590 (1999) ("Where conduct is shown to be continuing . . . the passage of time becomes less important and staleness may be overcome"). The descriptions of the three buys, which all occurred at the residence that was the target of the search warrant, as well as the information provided by Mary, furnished probable cause to issue the search warrant for the defendant's apartment.

b. *The stop and arrest of the defendant.* The defendant correctly asserts that the search warrant itself did not give the troopers authority to seize him one and one-half blocks from his apartment. See *Commonwealth* v. *Charros*, 443 Mass. 752, 764 (2005). However, at the time the car was stopped, the troopers were aware of the three controlled buys. Furthermore, they knew that these buys occurred during the month preceding the September 1, 2005, stop of the car, with the most recent within seventy-two hours of the stop. Accordingly, they had probable cause to believe that the defendant had committed a felony as proscribed by G. L. c. 94C, § 32E(*b*), and thus both the initial stop and subsequent warrantless arrest were valid. See *Commonwealth* v. *Charros*, 443 Mass. at 764-765 (controlled buy made under police supervision within past fifteen days provided a basis for arrest, independent of recently issued search warrant).

c. *The warrantless search of the defendant's car.* Although the troopers did not have a warrant to search the car, under "the automobile exception to the warrant requirement, the search of the [car] was justified as long as the [troopers] had probable cause to believe that there was contraband in the car." *Commonwealth* v. *Garden*, 451 Mass. 43, 47 (2008). At the motion hearing, Trooper Holland testified that he was trained in the

identification of marijuana, including its appearance and odor, that he had smelled burnt marijuana in the past, and that when he approached the driver's window, he detected an odor of burnt marijuana.[3] This alone furnished probable cause to believe that there was marijuana in the car, and thus its search was justified.[4] *Id.* at 48 ("the odor of marijuana is sufficiently distinctive that it alone can supply probable cause to believe that marijuana is nearby").[5]

In sum, the three controlled buys detailed in the affidavit supplied probable cause for the search warrant; the stop and arrest was supported by probable cause to believe the defendant had engaged in cocaine distribution; and the search of the car was proper under the automobile exception. Thus, the motion judge properly denied the defendant's motions to suppress evidence.

2. *Confidential informant.* The defendant argues that the identity of the informant should have been disclosed. Here, Mary did not participate in any of the charged crimes and she was not present during the execution of the search warrant, the

---

[3]Because a trained officer's detection of the smell of burnt marijuana permits a search of a vehicle's passenger compartment under the automobile exception, see *Commonwealth v. Garden,* 451 Mass. 43, 48 (2008), we need not consider the apparent inconsistency as to when the marijuana roaches were actually discovered.

[4]While the motion judge invoked the automobile exception based upon the probable cause supporting the defendant's arrest for drug distribution, he noted in dictum his view that police detection of the odor of marijuana also justified the search. In any event we are "free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." *Commonwealth v. Va Meng Joe,* 425 Mass. 99, 102 (1997). We also need not consider the applicability of the doctrine of search incident to lawful arrest. See, e.g., *Commonwealth v. Bongarzone,* 390 Mass. 326, 351 (1983).

[5]The defendant argues that the smell of burnt marijuana was a pretext to justify the search of the car. We defer to the motion judge's assessment of credibility of testimony, *Commonwealth v. Druce,* 453 Mass. 686, 699 (2009), and in this case, he explicitly found that Trooper Holland detected an odor of burnt marijuana. The defendant offered nothing that would undermine that finding. Additionally, the lack of a certificate of analysis of the marijuana roaches does not support the defendant's fabrication argument when the roaches were never introduced in evidence at any proceeding, and the defendant was not charged with possession of the roaches. Production of the roaches is not required when there is credible police testimony concerning the smell of marijuana. Compare *Commonwealth v. Kitchings,* 40 Mass. App. Ct. 591, 595-596 (1996).

seizure of the items from the defendant's apartment, or the defendant's arrest. She acted only as a tipster, not as an active participant in the crimes charged, and thus disclosure of her identity was not required. See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 408 (1989) (government not required to disclose identity of informant who is mere tipster and not active participant in charged offense); *Commonwealth* v. *Fernandes*, 30 Mass. App. Ct. 335, 339 (1991) (disclosure not required when informant did not participate in crime charged, even though he had participated in controlled buy within seven days of application for search warrant); Mass. G. Evid. § 509(a) (2010). Additionally, the Commonwealth's privilege applies even if the defendant knows Mary's true identity. See *Commonwealth* v. *Madigan*, 449 Mass. 702, 711 (2007). In balancing the public interest in maintaining the confidentiality of the informant against the defendant's right to prepare his defense, disclosure was not required in this case. See *Commonwealth* v. *Lugo*, 406 Mass. 565, 570-572 (1990).[6]

3. *Ineffective assistance.* The defendant argues that he received ineffective assistance of counsel based upon the relaxation, intentional or otherwise, of the adversary process. The record reflects that defense counsel in effect pursued a strategy of "jury nullification" (despite that this was a bench trial), conceded liability for some of the crimes charged, and used the trial in an extended effort to seek leniency in sentencing.[7]

---

[6]The defendant's argument that Mary's identity was subject to automatic discovery lacks merit. The Commonwealth did not intend to present testimony from Mary at trial (and indeed did not do so) and thus any "promises, rewards or inducements" made to her did not need to be disclosed. Mass.R.Crim.P. 14(a)(1)(A)(ix), as appearing in 442 Mass. 1518 (2004).

[7]For example, defense counsel informed the court that after the defendant was arrested, "he went to work in the financial district earning a tremendous salary, earning hundreds of thousands of dollars legitimately, not on the streets, and that is a tremendous turn around." Defense counsel further argued that the defendant "has had a remarkable turnaround in his life" and that "[v]ery few criminal defendants can come before the Court and say, guess what I turned my life around, yes I made a mistake, yes this is what I did."

In closing argument, defense counsel continued this strategy. He asked the court, "[w]hy should [the defendant] be held accountable for something that is so widely used," and suggested that based on the evidence, "this is just a, 'Low level operation.' " Perhaps most troublesome is his argument that the defendant does not "need to sit in a cell for five years to be told that what he did in 2005 was wrong; he already knows that, Judge."

Although we normally review claims of ineffective assistance under the familiar principles of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), the defendant seeks to bring his claim within dicta from *United States* v. *Cronic*, 466 U.S. 648 (1984), in which the United States Supreme Court identified three classes of ineffectiveness in which no showing of prejudice is required: a presumption of prejudice arises when there is (1) a "complete denial of counsel . . . at a critical stage of [the] trial"; (2) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate."[8] *Id.* at 659-660. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) (acknowledging there are some circumstances where a showing of prejudice is not required).

The Supreme Court has emphasized that the second category, which establishes prejudice per se when defense counsel fails to subject the prosecution's case to meaningful adversary testing, applies only when the attorney's failure to test the government's case is "complete." *Bell* v. *Cone*, 535 U.S. 685, 697 (2002). While Massachusetts has not had the opportunity to apply these principles to circumstances such as those presented here, courts in other jurisdictions have held that unauthorized concessions of guilt can constitute a lack of adversary testing within the meaning of *United States* v. *Cronic, supra.*[9]

We conclude that while some of defense counsel's remarks

---

[8]This third category can arise, for example, when "designation of counsel [is] either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard." *United States* v. *Cronic*, 466 U.S. at 660, quoting from *Powell* v. *Alabama*, 287 U.S. 45, 53 (1932).

[9]See, e.g., *United States* v. *Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) (defense counsel's concession in closing that there was no reasonable doubt about disputed factual issues "compel[led] an application of the *Cronic* exception"); *People* v. *Dodson*, 331 Ill. App. 3d 187, 194 (2002) (*Cronic* review warranted when defense counsel did not mount a true challenge to the State's case, in an effort to procure leniency); *State* v. *Carter*, 270 Kan. 426, 441 (2000) (attorney's "guilt-based defense" in the face of his client's claim of innocence "compel[led] application of the *Cronic* exception"); *State* v. *Anaya*, 134 N.H. 346, 354 (1991) (prejudice was presumed when defense counsel, against the wishes of the defendant, argued to the jury for an acquittal on the

were improper, there was not a complete lack of adversary testing. Defense counsel competently argued, and preserved for our review, issues relating to the search of the defendant's apartment, his stop and arrest, and the search of his car. After the defendant's unsuccessful motions to suppress, the evidence against him was overwhelming and, against counsel's advice, he rejected a favorable plea deal. We note that conceding guilt to less serious offenses can be an appropriate litigation strategy, see, e.g., *Commonwealth* v. *Durakowski*, 58 Mass. App. Ct. 92, 93 (2003), and in these circumstances, we do not discern a complete abandonment of the adversary process. Accordingly, the defendant is not entitled to a presumption of prejudice.

Nevertheless, we still assess the defendant's ineffective assistance claim under *Commonwealth* v. *Saferian*, 366 Mass. at 96. Here, the trial judge repeatedly recognized the proper scope of his role as fact finder, and he indicated that the attorney's behavior did not influence him.[10] Even if the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer," the defendant has failed to demonstrate that he was deprived "of an otherwise available, substantial ground of defence." *Ibid.*

4. *The judge's questioning.* During trial, the Commonwealth elicited testimony from Andrew Bogle, a former drug chemist with the State police crime laboratory, regarding the weight and identity of certain substances that were admitted in evidence. During the Commonwealth's direct examination, the judge questioned the witness. The defendant argues that the judge's questions, which span approximately four transcript pages, impermissibly aided the Commonwealth in meeting its burden of proof. We disagree. The judge's questions, which simply clarified the representative sampling procedure the chemist

---

charged offense of accomplice to first degree murder but for a conviction as an accomplice to second degree murder); *State* v. *Harbison*, 315 N.C. 175, 180 (1985) ("ineffective assistance of counsel, per se in violation of the Sixth Amendment [to the United States Constitution], has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent").

[10]During direct examination of the defendant's mother, the judge stated, "[o]bviously the question of guilt is still to be determined." Following counsel's closing argument, the judge stated, "[t]he Court will of course apply the law to the facts that it finds from the evidence."

employed, were proper and did not alter the Commonwealth's burden. See *Commonwealth* v. *Dias*, 373 Mass. 412, 416 (1977) ("[A] judge may properly question a witness, even where to do so may strengthen the Commonwealth's case, so long as the examination is not partisan in nature, biased, or a display of belief in the defendant's guilt"); *Commonwealth* v. *Hassey*, 40 Mass. App. Ct. 806, 810 (1996) ("[A] trial judge may question witnesses to clarify the evidence").

5. *Cumulative errors.* From what we have said above, it follows that we are not persuaded by the defendant's argument that his conviction should be reversed due to cumulative errors.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*