NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-896                                            Appeals Court

COMMONWEALTH  vs.  WASHINGTON PEARSON.

No. 15-P-896.

Norfolk.     June 7, 2016. - September 20, 2016.

Present:  Cypher, Grainger, & Kinder, JJ.

Arrest.  Search and Seizure, Arrest, Securing of premises,
    Fruits of illegal arrest, Warrant, Affidavit.  Evidence,
    Result of illegal arrest.  Practice, Criminal, Motion to
    suppress, Warrant, Affidavit.

Indictments found and returned in the Superior Court
Department on April 12, 2012.

A pretrial motion to suppress evidence was heard by Kenneth
J. Fishman, J., and the cases were tried before Raymond J.
Brassard, J.

Edward Crane for the defendant.
Pamela Alford, Assistant District Attorney, for the
Commonwealth.

CYPHER, J.  A jury convicted the defendant, Washington

Pearson, of four counts of breaking and entering in violation of

G. L. c. 266, § 18, and four counts of larceny over $250 in

violation of G. L. c. 266, § 30(1).  On appeal, he argues that

the motion judge erred in denying his motion to suppress evidence seized pursuant to a search warrant obtained following a warrantless arrest.  We find no error by the motion judge.

Following a pretrial hearing, the motion judge determined that warrants did not validly issue for the arrest of Jenell Johnson and the defendant in their apartment and, consequently, he allowed their motions to suppress statements made at the time of the arrests.[1,2]  He concluded, however, that evidence seized pursuant to the subsequently secured search warrant was untainted by the initial illegality and therefore admissible. The defendant claims that his motion to suppress should have been allowed in full because the search warrant was tainted by his prior unlawful arrest, and therefore could not constitute a genuinely independent source for the challenged evidence.

"In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law.'"  Commonwealth v. Keefner, 461 Mass. 507, 515 (2012), quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  "We make an independent determination of the correctness of the judge's application of constitutional

---

[1] The Commonwealth does not challenge the suppression of statements made at the time of the arrests.

[2] Johnson subsequently pleaded guilty and testified as a cooperating witness against the defendant at trial.

principles." Commonwealth v. Cassino, 474 Mass. 85, 88 (2016) (quotation omitted).

We recite the facts found by the motion judge after an evidentiary hearing, and supplement where necessary with undisputed testimony implicitly credited by the judge. Commonwealth v. Oliveira, 474 Mass. 10, 11 (2016). Between January 31, 2012, and February 8, 2012, Brookline police responded to five incidents of residential breaking and entering. Victims reported missing various valuable items, including jewelry, electronics, and credit cards. On February 6, 2012, one victim reported that a credit card reported stolen from his apartment had been fraudulently used at four local retail stores. Surveillance footage from three of the stores depicted a Hispanic female in her mid-to-late thirties, wearing blue jeans, a white fleece jacket, and a hat, making the fraudulent purchases. Surveillance footage from a fourth store depicted a woman with similar appearance, but wearing a white coat and black boots that matched the description of items previously purchased using the stolen credit card. An employee at one of the stores told police that the woman had been accompanied by a dark-skinned black male, estimated to be in his mid-to-late thirties.

On February 7, 2012, Brookline police received information about a breaking and entering at a Cambridge residence, where a

driver's license belonging to Johnson was found.  That victim told officers that she did not know Johnson.  Based on the information on the driver's license, the police found booking photographs from a 2011 breaking and entering incident, for which Johnson and the defendant were both arrested while attempting to flee in the defendant's vehicle.  The police determined that the booking photographs of Johnson and the defendant matched the physical characteristics of the suspects depicted in the surveillance footage from the retail stores. When presented with a photographic array, an employee at one of the stores identified Johnson and the defendant as the customers who had made purchases using the stolen credit card.

On February 9, 2012, police officers arrived at the apartment where Johnson and the defendant were living, purporting to have warrants for their arrest.[3]  When Johnson answered the door, she was taken into custody and advised of her Miranda rights.  The officers then asked her where they could locate some of the items allegedly purchased with the stolen credit card.  She directed them to a bedroom on the second floor, where they observed items matching the description of

---

[3] The motion judge found that properly executed applications for criminal complaints filed by the police, signed by the clerk-magistrate who determined that there was probable cause to arrest the defendant and Johnson and authorized the issuance of arrest warrants, were not sufficient to satisfy the warrant requirement where the police did not have the arrest warrants in hand at the time they went to the apartment.

fraudulently purchased merchandise and stolen goods in plain view. The officers asked Johnson, whom they had escorted to the second floor, for consent to search the apartment, which she declined to give, saying that it was not her house and things found there may not belong to her. The officers apprehended the defendant in the bathroom on the third floor.

After Johnson and the defendant had been arrested and transported to police headquarters, police remained at the house to secure the premises while a search warrant was prepared.[4] While securing the premises, police officers spoke with the owner of the house, who identified himself as Johnson's stepfather and told the officers that the defendant had been staying in the residence for the past five or six weeks. The owner notified police that he had discovered a shopping bag containing silverware, jewelry bags, and a prescription bottle bearing the name of a victim of one of the burglaries, in a trash can outside the house.

The defendant argues that the judge erroneously omitted the first of a two-step independent source inquiry mandated by Murray v. United States, 487 U.S. 533 (1988), by failing to determine whether police officers' decision to seek the warrant

---

[4] The defendant does not claim that the police improperly secured the premises.

was influenced by their observations in the course of the warrantless entry and arrest.

The defendant bases his argument on the independent source analysis articulated by the United States Court of Appeals for the First Circuit (First Circuit) in United States v. Dessesaure, 429 F.3d 359 (1st Cir. 2005). Under that approach, determination of police officers' intent to seek a warrant is framed as a subjective inquiry.[5] See id. at 369; United States v. Siciliano, 578 F.3d 61, 69 (1st Cir. 2009). Cf. United States v. Silva, 554 F.3d 13, 19 (1st Cir. 2009) (holding that, in totality of circumstances, reasonable officer would seek warrant). Because Massachusetts courts may provide greater protection against search and seizure under art. 14 of the Massachusetts Declaration of Rights than is secured by the Fourth Amendment to the United States Constitution, see

---

[5] Although the First Circuit frames the first Murray prong as a subjective test ("would these particular police officers have sought the warrant?"), it instructs Federal District Courts to ascertain officers' subjective intent by objective means, based on the totality of attendant circumstances. United States v. Dessesaure, 429 F.3d at 369. Since Murray, the United States Supreme Court has eschewed the use of subjective intent in the context of the Fourth Amendment to the United States Constitution. See Whren v. United States, 517 U.S. 806, 812-816 (1996); Devenpeck v. Alford, 543 U.S. 146, 153-156 (2004). The First Circuit "did not reach this question in Dessesaure because it was unnecessary for the resolution of the case. We again decline to reach the question, though for a different reason. The Supreme Court has repeatedly instructed lower courts that only it has the prerogative to overrule its own decisions." United States v. Siciliano, 578 F.3d 61, 69 n.5 (1st Cir. 2009).

Commonwealth v. Blevines, 438 Mass. 604, 607 n.4 (2003), they are not required to follow the First Circuit's analysis of officer intent. Instead, when judging the propriety of police conduct, Massachusetts courts apply "a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." Commonwealth v. Ceria, 13 Mass. App. Ct. 230, 235 (1982) (quotation omitted). The appropriate inquiry under State jurisprudence is, therefore, whether it was objectively reasonable for police to seek a warrant under the circumstances. See Commonwealth v. Santana, 420 Mass. 205, 208 (1995). On this record, we conclude that it was reasonable for police to secure a search warrant for which they had probable cause.

To demonstrate probable cause, "[a]n affidavit must contain sufficient information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that the items reasonably may be expected to be located in the place to be searched at the time the search warrant issues." Commonwealth v. DeJesus, 439 Mass. 616, 626 (2003). "Evidence obtained during a search pursuant to a warrant that was issued after an earlier illegal entry and search is admissible as long as the affidavit in support of the application for a search warrant contains information sufficient to establish probable cause to search the premises 'apart from'

observations made during the initial illegal entry and search." Commonwealth v. Tyree, 455 Mass. 676, 692 (2010), quoting from Commonwealth v. DeJesus, 439 Mass. at 625. The defendant argues that the motion judge erred in taking statements made by the owner of the house into account as part of the probable cause analysis because that information was the product of officers' unlawful entry and arrest. He asserts that, without the owner's statement that the defendant had been living at the apartment, the affidavit failed to establish a connection between the items sought and the place to be searched, and therefore the police lacked probable cause to search the apartment.

The owner of the house spoke to police officers while they were lawfully securing the premises. Although the nature of the owner's interaction with officers is not clear, "[t]he record is devoid of anything to suggest that the police did anything to solicit, provoke, or tempt [the owner] into making [his] disclosures, and thus devoid of anything suggesting police misconduct." Commonwealth v. Brandwein, 435 Mass. 623, 631 (2002). In this case, where there is no indication that police engaged in serious, "distinctly egregious" conduct toward the owner, the defendant does not have target standing to challenge the owner's statements to police. See Commonwealth v. Santiago, 470 Mass. 574, 578 (2015) (recognizing, but declining to adopt,

target standing where police conduct was not "distinctly egregious").

As for the defendant's contention that the owner's statements constitute the fruit of unlawful police conduct toward himself (as opposed to misconduct toward the owner), we agree with the motion judge's implicit finding that the statements were an independent and intervening act, giving rise to probable cause to search the apartment. "The 'crucial question' regarding whether a particular statement must be suppressed as the fruit of the initial illegal [entry and arrest] is whether that statement 'has been come at by exploitation of . . . [the primary illegality] or instead by means sufficiently distinguishable to be purged of the primary taint.'" Commonwealth v. Estabrook, 472 Mass. 852, 860 (2015), quoting from Commonwealth v. Bradshaw, 385 Mass. 244, 258 (1982). "In determining whether the connection between an illegal arrest and [] subsequent [third party statements] has become so attenuated as to dissipate the taint of the illegality, we consider the following: (1) the temporal proximity of the arrest to the [statements]; (2) the presence or absence of intervening circumstances; and (3) the purpose and flagrancy of the misconduct in the context of the circumstances of the arrest." Commonwealth v. Borges, 395 Mass. 788, 795-796 (1985).

As noted above, the owner of the house spoke to police while they were acting with lawful authority to secure the premises, and after the defendant had already been arrested and transported to police headquarters. See Commonwealth v. Blake, 413 Mass. 823, 829 (1992) ("Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of the dwelling or its contents"). Thus, the temporal proximity between the unlawful arrest and the owner's statements was attenuated. Moreover, the owner's statements to police were an intervening act that occurred after the arrest had already concluded, not "in direct and immediate response to the illegal police action." Commonwealth v. Borges, 395 Mass. at 796. Finally, we do not regard the warrantless arrest, although unlawful, as flagrant misconduct where police had probable cause to arrest the defendant and proceeded to procure a warrant before commencing to search the apartment. Accordingly, the owner's disclosure to police that the defendant resided at the apartment to be searched was sufficiently distinguishable from the defendant's unlawful arrest "to be purged of the primary taint." Commonwealth v. Estabrook, 472 Mass. at 860. See Commonwealth v. Brandwein, 435 Mass. at 631-632 ("the target of the exclusionary rule is official misconduct, and the rule is not intended to discourage citizens

from aiding to the utmost of their ability in the apprehension of criminals" [quotation omitted]).

Because the search warrant supported by probable cause constituted an independent source of the challenged evidence, it follows that the motion judge did not err in denying, in part, the defendant's motion to suppress.

Judgments affirmed.