NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-1302                                         Appeals Court

COMMONWEALTH  vs.  WASHINGTON PEARSON.


No. 18-P-1302.

Middlesex.     May 14, 2019. - October 28, 2019.

Present:  Blake, Henry, & McDonough, JJ.


Burglary.  Intimidation of Witness.  Witness, Intimidation.
    Arrest.  Constitutional Law, Arrest, Search and seizure,
    Assistance of counsel.  Search and Seizure, Arrest,
    Warrant, Fruits of illegal search.  Practice, Criminal,
    Motion to suppress, Warrant, Assistance of counsel.


    Indictments found and returned in the Superior Court
Department on October 25, 2012, and December 10, 2013.

    Pretrial motions to suppress evidence were heard by
Elizabeth M. Fahey, J.; the cases were tried before Douglas H.
Wilkins, J., and a motion for a new trial, filed on January 8,
2018, was heard by him.


    Edward Crane for the defendant.
    Timothy Ferriter, Assistant District Attorney, for the
Commonwealth.


    BLAKE, J.  Following a crime spree in Middlesex and Norfolk

Counties, the defendant, Washington Pearson, was indicted for

multiple breaking and entering and related offenses in both

counties (we refer hereafter to these offenses as burglary-related crimes).[1]  He was first tried and convicted by a Superior Court jury in Norfolk County.[2]  He appealed, contending that his motion to suppress was erroneously denied.  We affirmed the Norfolk convictions in Commonwealth v. Pearson, 90 Mass. App. Ct. 289 (2016) (Pearson I).

Meanwhile, the defendant was tried and convicted by a Superior Court jury in Middlesex County of burglary-related crimes and intimidation of a witness.[3]  Then, after a jury-waived trial in Middlesex County, the defendant was found to be a habitual criminal on three of the burglary-related convictions and on the intimidation of a witness conviction.  The defendant filed a motion for a new trial on the intimidation conviction, which was denied after a nonevidentiary hearing.  The defendant's appeal from the judgments on the burglary-related indictments and his appeal from the order denying his motion for

_____

[1] Jenell Johnson, the codefendant, became a cooperating witness, as discussed infra, and is not a party to this appeal.

[2] The Norfolk County convictions included multiple counts of breaking and entering in the daytime with the intent to commit a felony.

[3] In Middlesex County, the defendant was convicted of two counts of breaking and entering in the daytime with intent to commit a felony, two counts of larceny over $250, four counts of identity fraud, four counts of improper use of a credit card, and one count of attempting to break and enter in the daytime. He was also convicted of intimidation of a witness, Jenell Johnson.

a new trial on the indictment charging intimidation were consolidated in this court.  We affirm.

Background.  1.  The burglaries.  Between January 31 and February 8, 2012, a series of burglaries occurred in Brookline and Cambridge resulting in the theft of jewelry, credit cards, and electronics.  While investigating a burglary that occurred in Brookline on February 6, 2012, Brookline Police Detective Matthew McDonnell learned that one of the stolen credit cards was used to make a series of fraudulent purchases at multiple retail stores.  Surveillance video from some of the stores depicted a Hispanic woman in her thirties making the purchases. She was accompanied by an African-American man.

On February 8, 2012, Brookline police learned of a home burglary in Cambridge, where the victim found a driver's license in the name of Jenell Johnson, a person unknown to the victim. Using Johnson's name, Detective McDonnell found booking photographs from a 2011 breaking and entering involving Johnson and the defendant.  The photographs matched the physical description of the suspects as seen in the surveillance video from the retail stores.

2.  The arrests.  Detective McDonnell applied for arrest warrants for the defendant and Johnson based on the Brookline burglary.  At approximately 12:30 A.M. on February 9, 2012, a clerk-magistrate of the Brookline Division of the District Court

Department determined that there was probable cause to arrest the defendants, authorized the issuance of arrest warrants, and signed the applications for complaints.

That same day, at approximately 6:30 A.M. in a coordinated effort by the Brookline, Cambridge, and Lynn police departments, officers went to the Lynn apartment shared by the defendant and Johnson, purporting to have warrants for their arrest. Although the officers had applied for arrest warrants, they had not yet been issued.

Johnson opened the door, was taken into custody, and was advised of the Miranda rights. When asked about the location of a pair of boots she had purchased, Johnson directed officers to a bedroom, where they saw items matching the description of items fraudulently purchased using the Brookline burglary victim's credit card. The officers found the defendant hiding in the third-floor bathroom and arrested him.

After the defendant and Johnson were arrested and transported to the police station, officers remained at the apartment to secure it while a search warrant was obtained. During that time, police spoke with the owner of the house, who identified himself as Johnson's stepfather. He confirmed that the defendant and Johnson had been staying there for a number of weeks. He told the officers that he had discovered a shopping bag in a trash can at the back of the house that contained a

prescription bottle in the name of the Brookline burglary victim, silverware, blue velvet Tiffany jewelry bags, and assorted costume jewelry.

3. Norfolk County case. The defendant was first indicted in Norfolk County, where he chose to represent himself. He filed a motion to suppress statements made to police during and after his arrest, as well as evidence obtained through the execution of search warrants of the apartment and two cars. Following an evidentiary hearing, the motion judge issued an order dated January 13, 2013, allowing in part and denying in part the defendant's motion (Norfolk order). The judge found that the police did not have valid arrest warrants for the defendant or Johnson when the officers entered the apartment.[4] Accordingly, the judge ordered the suppression of statements made at the times of the arrests. He then excluded from the search warrant affidavit all information obtained during the arrests and found that the subsequent search of the residence was untainted by the initial illegality, as the remainder of the affidavit established probable cause. Finally, he denied the

---

[4] The judge who issued the Norfolk order found that the clerk-magistrate checked the boxes on the applications for complaints that stated, "[P]robable cause found for listed offenses" and "warrants to issue." The Commonwealth argued to the motion judge that this effectively satisfied the warrant requirement. The motion judge found that the formalities of Massachusetts statutory and constitutional law preclude such a finding.

portion of the motion seeking to suppress postarrest statements made by the defendant. The defendant was convicted on all of the Norfolk County indictments.

4. Middlesex County case. Meanwhile, the defendant was indicted in Middlesex County on other burglary-related charges, and he once again elected to represent himself. After a colloquy that the defendant does not claim was involuntary, uninformed, or defective, a Superior Court judge determined that the defendant waived his right to counsel, and the judge appointed Attorney Scott Matson to act as standby counsel.

The defendant filed motions to suppress,[5] and on January 16, 2014, he orally requested an evidentiary hearing.[6] The judge ruling on the motion "incorporated [the findings of fact in the Norfolk order] by reference . . . for the purpose of deciding whether an evidentiary hearing is required in the present case." The judge determined that, because the issue whether the warrant was otherwise supported by probable cause is an analysis that "begins and ends with the four corners of the affidavit," there

---

[5] The defendant did not include copies of the motions in the record appendix.

[6] The transcript of the hearing at which the defendant orally requested an evidentiary hearing is not included in the record appendix, and the occurrence of this hearing is not listed in the docket, but it is referenced in the order dated January 21, 2014, denying the request for an evidentiary hearing.

was no need for an evidentiary hearing on that matter.  The judge further concluded that "[t]he court will hear argument on whether or not there was probable cause to issue the search warrant with the unlawfully obtained information removed from the affidavit submitted in support of the application for the search warrant," and he outlined the information the court would consider at such hearing, and the information that would be excluded.  A different judge held that hearing, denied the defendant's motions to suppress, and ordered that the Norfolk order "remain[] in effect."  Notably, and as conceded by defense counsel at oral argument before this court, the defendant never specifically raised the question whether the police officers would have applied for a search warrant if the initial entry into the apartment was not illegal.

On December 10, 2013, another Middlesex County indictment was returned against the defendant for intimidation of a witness, stemming from his communication with Johnson while the two were held on bail pending trial.  At his arraignment on this indictment, the defendant did not waive his right to counsel and explicitly requested the appointment of counsel other than Attorney Matson "due to [his] involvement in the related

matter."[7]  Attorney Matson was appointed for the arraignment.  In 2014, the Commonwealth's motion to join the burglary-related and witness intimidation indictments for trial was allowed, and the defendant's motion to sever was denied.[8]

Over a series of court hearings, issues related to Attorney Matson's representation of the defendant on the intimidation indictment were raised.  It is this representation that serves as the basis of the defendant's claim of ineffective assistance of counsel.

Discussion.  1.  The Middlesex burglary-related convictions.  The defendant asks us to overrule Pearson I, 90 Mass. App. Ct. at 292, contending that the court there adopted a version of the independent source doctrine that provides him with less protection than what is required under Federal law. See Murray v. United States, 487 U.S. 533 (1988).  In the alternative, the defendant asks us to remand the case to the Superior Court for an evidentiary hearing on his motion to suppress.  We decline to overrule Pearson I or to remand the case.  This case is controlled in all material respects by

_____

[7] The Commonwealth objected, contending that Attorney Matson should be appointed because of his familiarity and involvement in the burglary-related indictments.

[8] The defendant filed another motion to suppress on June 18, 2014, which was also denied.  The defendant did not include a copy of this motion in the record appendix; however, we obtained a copy of the motion from the Superior Court.

_Commonwealth_ v. _DeJesus_, 439 Mass. 616, 627 n.11 (2003) (where defendant was already under arrest for involvement in sale of 300 grams of cocaine, and had been identified as regular supplier, court concluded that "[t]here can be no doubt that the police were committed to an investigation of the defendant's cocaine dealing before seeing additional cocaine in his kitchen, and would have sought the search warrant with or without that observation"). Here, as in _DeJesus_, the police were committed to an investigation of the defendant before the illegal entry, and had, in fact, applied for arrest warrants before the illegal entry. Moreover, a clerk-magistrate had determined that there was probable cause to arrest the defendant before the illegal entry.

In _DeJesus_, the court recognized that _Murray_ "extended the independent source doctrine to apply to 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'" _DeJesus_, 439 Mass. at 627 n.11, quoting _Murray_, 487 U.S. at 537. Pursuant to _Murray_, the independent source doctrine requires a two-pronged analysis: (1) whether the police officers would have decided to seek a search warrant without the evidence obtained from an illegal search; and (2) whether there was sufficient probable cause to obtain a search warrant without the tainted information. See

United States v. Silva, 554 F.3d 13, 19 (1st Cir. 2009), citing

Murray, supra at 542.[9]  Under the analysis used by the United

States Court of Appeals for the First Circuit, "determination of

police officers' intent to seek a warrant is framed as a

subjective inquiry."  See United States v. Dessesaure, 429 F.3d

359, 369 (1st Cir. 2005) (court focused on whether "these

particular police officers [would] have sought the warrant even

if they had not known, as a result of the illegal search," that

evidence sought was present in specified location).  The

officers' subjective intent is to be ascertained by objective

means, based on the totality of the attendant circumstances.

See id.

In Pearson I, 90 Mass. App. Ct. at 292, we stated that

"[t]he appropriate inquiry under State jurisprudence is . . .

whether it was objectively reasonable for police to seek a

warrant" even without the information obtained through the

illegal search.  This approach, which is based on art. 14 of the

Massachusetts Declaration of Rights, is intended to provide

---

[9] We are not bound by the analysis of constitutional principles applied by the United States Court of Appeals for the First Circuit.  See Commonwealth v. Montanez, 388 Mass. 603, 604 (1983) ("Though we always treat their decisions with deference, we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of Federal law").  Nonetheless, the First Circuit's independent source doctrine cases, upon which the defendant relies, highlight the importance of an objective inquiry.  See United States v. Silva, 554 F.3d at 19.

added protection to a defendant by avoiding the potential for a judge to find that the first prong of Murray's two-prong test was satisfied on the basis of police testimony that a search warrant would have been sought, even if the illegal entry had not been made, when such testimony would be objectively unreasonable. Pearson I, 90 Mass. App. Ct. at 292.

Here, there is no basis for a finding that the police would not have applied for a search warrant. The situation was rapidly evolving. Numerous break-ins with the same modus operandi continued unabated. Once the police identified the suspects, they went to a clerk-magistrate in the middle of the night to obtain arrest warrants. After arresting the defendant and Johnson, the police remained on the scene to secure the residence while a search warrant was obtained. During this time, the landlord approached the police and pointed them to items in a trash can that were consistent with the burglaries, as well as a prescription bottle bearing the name of one of the victims. Given the rash of burglaries spanning two counties, the police sought to arrest the defendant and Johnson quickly. They knew that a large amount of property had been stolen or obtained by use of stolen credit cards. On this record, there is no basis for a finding other than the police would have sought a search warrant, and indeed, they did. As in DeJesus, 439 Mass. at 627 n.11, the police were "committed" to this

investigation and would have sought a search warrant with or without the initial observations.[10]

The independent source doctrine is an exception to the fruit of the poisonous tree doctrine as set forth in Wong Sun v. United States, 371 U.S. 471, 487-488 (1963).  At the core of this doctrine is the goal that in gathering evidence of a crime, the police should not be allowed to benefit by exploiting their illegal conduct.  On the other hand, "the Commonwealth also may rely on evidence obtained after the illegal search if it can show that the evidence was independently obtained.  Holding otherwise would contravene the principle of the independent source doctrine that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position [than] they would have been in if no police error or misconduct had occurred" (quotations and citations omitted).  Commonwealth v. Estabrook, 472 Mass. 852, 868 n.26 (2015).  See Commonwealth v. Cassino, 474 Mass. 85, 91 n.4 (2016).  Here, the police did not

---

[10] The judge did not abuse his discretion in denying the request for an evidentiary hearing on the motion to suppress. "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

benefit from the illegal search.  The Middlesex judge properly concluded that what remained in the search warrant affidavit after exclusion of the tainted evidence was more than enough to establish probable cause, and thus the defendant's motion to suppress was properly denied.  This is precisely what is required by Commonwealth v. Tyree, 455 Mass. 676, 692 (2010), and then reaffirmed in Estabrook, supra at 868.

2.  The intimidation conviction.  The defendant filed a motion for a new trial on the intimidation indictment, claiming that he received ineffective assistance of counsel during trial on that charge.  "We review the denial of a motion for a new trial 'only to determine whether there has been a significant error of law or other abuse of discretion.'"  Commonwealth v. Sullivan, 469 Mass. 621, 629 (2014), quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  "To prevail on a motion for a new trial claiming ineffective assistance of counsel, a defendant must show that there has been a 'serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer,' and that counsel's poor performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Commonwealth v. Millien, 474 Mass. 417, 429-430 (2016), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  "A strategic or tactical decision by

counsel will not be considered ineffective assistance unless that decision was 'manifestly unreasonable' when made." Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978).

Despite the defendant's protestations about Attorney Matson's appointment as standby counsel on the burglary-related charges, and his appointment as counsel on the intimidation indictment, the defendant did not appeal the propriety of this "bifurcated" representation. In fact, when Attorney Matson informed the judge that in his professional view this was not a good way to proceed, the defendant interjected, "Your Honor, I will agree, I will help [the assistant district attorney] and the [c]ourt, I will agree with what the [c]ourt has said, and I will put as much forward as I can." Indeed, one could say he acquiesced to this arrangement.

In any event, the defendant's sole claim is that he was prejudiced by Attorney Matson's decision to not cross-examine Johnson.[11] The defendant supported his motion for a new trial with an affidavit from Attorney Matson but did not file an affidavit of his own. After a nonevidentiary hearing, the motion judge, who was also the trial judge, denied the motion,

---

[11] At trial, Attorney Matson gave an opening statement on the intimidation indictment. He did not cross-examine Johnson and did not give a closing argument.

concluding that Attorney Matson "exercised his professional judgment on [the defendant's] behalf in the circumstances" and that Attorney Matson's chosen strategy at trial was a "tactical decision." The judge also noted that there was "little to be gained by . . . intervention [on Attorney Matson's part] and something to be lost. . . . Attorney Matson acted entirely reasonably in declining to compromise the effectiveness of [the defendant's] own representation. His decision necessarily accepted some imperfections in [the defendant's] examination or argument to achieve the greater benefit of [the defendant's] total performance. . . . His decisions were not 'manifestly unreasonable when made.'" In addition, the judge concluded that the defendant was not prejudiced by Attorney Matson's inaction because the defendant fully presented his own defense such that "further participation by Attorney Matson would not likely have achieved anything for the defense."

The defendant relies on United States v. Cronic, 466 U.S. 648, 658-660 (1984), to argue that we must presume prejudice on these facts. He cites the second of three classes of ineffective assistance to support his argument that there is a presumption of prejudice. Specifically, he claims that "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," Commonwealth v. Velez, 77 Mass. App. Ct. 270, 277 (2010), quoting Cronic, supra at 659-660, and

that a reasonably competent attorney could have done a better job testing the Commonwealth's case. However, that is simply not enough, as the Cronic holding has limited application. In Bell v. Cone, 535 U.S. 685, 696-697 (2002), the United States Supreme Court clarified that the presumed prejudice described in the second class of ineffectiveness outlined in Cronic requires a complete failure to test the government's case. See Commonwealth v. Alvarez, 62 Mass. App. Ct. 866, 872 (2005) ("unless counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[,] . . . a finding of ineffectiveness without a demonstration by the defendant of specific errors and resulting prejudice is inappropriate" [quotation and citation omitted]). That did not happen here. The Commonwealth's theory of the case was thoroughly tested. While Attorney Matson did not in fact examine the witness or deliver a closing argument, the defendant comprehensively cross-examined Johnson and explored all viable defenses.[12] Additional participation by Attorney Matson would not likely have achieved a better outcome. The judge did not abuse his discretion in denying the motion for new trial.

Judgments affirmed.

---

[12] The defendant cross-examined Johnson about her cooperation agreement, criminal history, and communications while the two were in custody.

HENRY, J. (dissenting in part).  I agree with the majority that this case is controlled by Commonwealth v. DeJesus, 439 Mass. 616 (2003), "in all material respects."  Ante at   .  In DeJesus, the court rightly acknowledged and applied the subjective test required by the United States Supreme Court under the Fourth Amendment to the United States Constitution. However, our decision in Commonwealth v. Pearson, 90 Mass. App. Ct. 289 (2016) (Pearson I), does not.  Pearson I conflicts with controlling Supreme Court precedent and departs from DeJesus. Massachusetts courts cannot provide less protection from unlawful searches than the Supreme Court mandates.  Accordingly, I dissent as to the issue of the defendant's request for an evidentiary hearing on his motion to suppress.

Our case law seems to have strayed because of a footnote -- or rather, because later case law overlooked that footnote.  As explained by the Supreme Judicial Court in a footnote, DeJesus, 439 Mass. at 627 n.11:

> "In Murray v. United States, 487 U.S. 533 (1988), the Supreme Court extended the independent source doctrine to apply to 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'  Id. at 537.  Accordingly, the Murray Court held that, under the Fourth Amendment, bales of marijuana first discovered by Federal law enforcement agents during an illegal warrantless search of a warehouse may, when later rediscovered and seized pursuant to a warrant to search the warehouse, have an independent source in the warrant, provided that neither the decision to seek that warrant nor the decision to issue it was influenced by the

earlier illegal entry and observation of the bags. See id. at 541-543. Because the District Court judge had made no clear findings as to whether the agents would have sought a warrant had they not earlier entered the warehouse, the Murray Court remanded the case to the trial court for a determination whether there was, in fact, an independent source for the challenged evidence. See id. at 543-544.

"Our decision in this case is grounded on art. 14 [of the Massachusetts Declaration of Rights]. Cognizant that we are not free to impose less restrictive standards under State constitutional analysis than are required under the Fourth Amendment, we nevertheless conclude that it is not necessary to remand this case to the trial judge. The defendant raises no claim that the police officers would not have sought a warrant had they not earlier entered the apartment and appears to concede that the initial entry, albeit illegal, was made with the intent thereafter to obtain a warrant. The defendant was already under arrest for his involvement in a sale of approximately 300 grams of cocaine, and had been identified by [a witness] as a regular supplier of cocaine. There can be no doubt that the police were committed to an investigation of the defendant's cocaine dealing before seeing additional cocaine in his kitchen, and would have sought the search warrant with or without that observation. With respect to the independent source issue, the defendant asserts only that the affidavit in support of the warrant was insufficient to support a finding of probable cause without the description of cocaine and drug paraphernalia observed during the initial illegal entry. (The defendant undoubtedly does so because, unlike in the Murray case, the supporting affidavit on its face indicates that a warrantless entry was made and that at least some of the evidence listed on the warrant application had been observed in plain view). Our determination in this case that the search pursuant to the warrant was a genuinely independent source of the evidence at issue is, on the record established by the parties, purely one of law."

In other words, the Supreme Judicial Court in DeJesus acknowledged that Murray requires a two-prong inquiry to determine whether (1) the particular police officers would have sought a search warrant without the evidence obtained from an

illegal search, and (2) there was sufficient probable cause to obtain a search warrant without the tainted information. The court also acknowledged that in some cases, the first Murray prong requires an evidentiary hearing into the subjective intent of the particular police officers involved in the illegal search -- inquiring whether they would have sought a warrant without the tainted information. In DeJesus, the defendant did not raise a first prong challenge. The Supreme Judicial Court found the two-prong Murray test satisfied.

Subsequently, however, the Supreme Judicial Court, in Commonwealth v. Tyree, 455 Mass. 676 (2010), omitted the requirement of a hearing into the subjective intent of the particular police officers. The court wrote:

> "Evidence obtained during a search pursuant to a warrant that was issued after an earlier illegal entry and search is admissible as long as the affidavit in support of the application for a search warrant contains information sufficient to establish probable cause to search the premises 'apart from' observations made during the initial illegal entry and search. Commonwealth v. DeJesus, 439 Mass. 616, 625 (2003). In such circumstances, the search pursuant to a valid warrant provides an independent source for the challenged evidence 'untainted by information discovered during the initial [illegal] entry.' Id. at 627."

Tyree, supra at 692. In other words, without any discussion, the court in Tyree dropped the subjective inquiry into the police officers' motivations, essentially removing the first Murray prong.

Then, in Pearson I, 90 Mass. App. Ct. at 292, this court materially changed the first Murray prong into an objective inquiry as to "whether it was objectively reasonable for police to seek a warrant" even without the information obtained through the illegal search.  This reframing deprives the defendant of the opportunity to challenge whether the particular police officers would have sought a warrant had they not earlier entered the home illegally.  Indeed, this reframing collapses the two prongs of the Murray test, because if probable cause existed without the illegally obtained information, it would be objectively reasonable for police to seek a search warrant.

In Pearson I, 90 Mass. App. Ct. at 292, this court stated that the new objective standard provides defendants with more protections than Federal law.  Indeed, in many cases, if not the overwhelming majority, the outcome of using a subjective versus objective inquiry for the first Murray prong will be a distinction without a difference.  But because we cannot say with certainty that in every case the objective Pearson I standard will provide a defendant with greater protection, we are not following binding Supreme Court precedent.  Thus, under Pearson I, Massachusetts courts are not determining that there was, in fact, an independent source for the challenged evidence.

That is not our prerogative.  Numerous cases from around the country recognize this difference.[1]  We should correct our error.

_____

[1] See, e.g., United States v. Rose, 802 F.3d 114, 123-124 (1st Cir. 2015), cert. denied, 136 S. Ct. 2418 (2016) (referring to first prong as "subjective inquiry" that "turns on whether the particular officer would have still sought the warrant absent the unlawfully-obtained information"); United States v. Hill, 776 F.3d 243, 252 (4th Cir. 2015) (remanding for factual determination on officer's intent to seek warrant); United States v. Markling, 7 F.3d 1309, 1317-1318 (7th Cir. 1993) (remanding for factual finding whether actual officer involved would have sought search warrant absent illegal search); United States v. Restrepo, 966 F.2d 964, 972 (5th Cir. 1992) ("unlike the objective test of whether the expurgated affidavit constitutes probable cause to issue the warrant, the core judicial inquiry before the [D]istrict [C]ourt on remand is a subjective one:  whether information gained in the illegal search prompted the officers to seek a warrant"); United States v. Herrold, 962 F.2d 1131, 1141 (3d Cir.), cert. denied, 506 U.S. 958 (1992) (first prong satisfied where District Court heard evidence that officers intended to seek search warrant prior to unlawful entry); State v. Gulbrandson, 184 Ariz. 46, 59 (1995), cert. denied, 518 U.S. 1022 (1996) (focusing on detective's subjective intent when applying Murray); Fultz v. State, 333 Ark. 586, 594 (1998) ("the warrant can be defeated if the officer's motivation for the warrant arose from evidence discovered during the illegal search"); People v. Weiss, 20 Cal. 4th 1073, 1079 (1999) (Murray requires "a finding that the police subjectively would have sought the warrant even without the illegal conduct"); People v. Schoondermark, 759 P.2d 715, 719 (Colo. 1988) ("the People must bear the burden of establishing by a preponderance of the evidence that the officers would have sought the warrant even absent the information gained by the initial illegal entry"); Evans v. United States, 122 A.3d 876, 884 (D.C. 2015) (recognizing that first prong of Murray requires factual findings whether actual officer involved would have sought search warrant absent illegal entry); People v. Carter, 284 Ill. App. 3d 745, 752-753 (1996) (finding first prong not met because officers testified that they only decided to seek warrant after their unlawful entry); Kamara v. State, 205 Md. App. 607, 627-628 (2012) (looking to subjective intent of officers when applying first prong); State v. Lieberg, 553 N.W.2d 51, 57-58 (Minn. Ct. App. 1996) (recognizing that Murray requires factual determination about

As for whether the issue was preserved, it is undisputed that the defendant requested an evidentiary hearing.[2]  The Middlesex motion judge denied the request based on the wrong legal standard.  Citing Commonwealth v. O'Day, 440 Mass. 296, 297 (2004), the motion judge determined that the only question was "whether or not the warrant was supported by probable cause."  O'Day, however, is wholly inapplicable because it did

_____

subjective intent of officers); State v. Jurgens, 235 Neb. 103, 106 (1990) (remanding for further findings on specific officer's intent to seek search warrant); State v. Holland, 176 N.J. 344, 364-365 (2003) (looking to officers' subjective intent and decision-making in applying first prong); People v. Marinez, 121 A.D.3d 423, 424 (N.Y. App. Div. 2014) (ordering new trial where evidence demonstrated unlawful search prompted officer to seek search warrant); State v. Winkler, 567 N.W.2d 330, 334 (N.D. 1997) ("Murray instructs us to determine what actually motivated the search and what was the intention of the officers in the specific case.  This results in a subjective, rather than objective test"); State v. Krukowski, 100 P.3d 1222, 1227-1228 (Utah 2004) (recognizing that first Murray prong requires credibility determination when officer asserts that he would have sought warrant regardless of illegal entry); State v. Hilton, 164 Wash. App. 81, 92 (2011), cert. denied, 568 U.S. 914 (2012) ("the question is whether the process of obtaining the derivative evidence was tainted by an earlier illegality.  This factual problem necessarily looks to what the police were doing and what motivated them to take the action they did"); State v. Lange, 158 Wis. 2d 609, 626-627 (App. Ct. 1990) (reviewing officer's testimony about his subjective intent to determine whether first prong was satisfied).

[2] I disagree with the majority's reliance on defense counsel's statements at oral argument to conclude that the defendant did not preserve the issue.  Ante at    .  See Commonwealth v. Johnson, 481 Mass. 710, 726 n.14 (2019), quoting Commonwealth v. Wojcik, 358 Mass. 623, 631 (1971) ("Statements in a brief or oral argument cannot be used as a means of placing before this court any facts which are not included in the record on appeal").

not involve an illegal search.  The issue there was whether there was sufficient probable cause to search the defendant's home (as opposed to his workplace).  Id.  Thus, where the motion judge here entertained the defendant's request for an evidentiary hearing and then made an error of law, the judge's denial of the defendant's request was an abuse of discretion.[3]

Moreover, I disagree with majority's holding that "there is no basis for a finding that the police would not have applied for a search warrant."  Ante at   .  We cannot hold this as a matter of law, and it is not our function to decide issues of fact.  We know that the police did not seek a search warrant based on the information they possessed prior to the illegal entry.  However, the current record does not reveal why.  That is a question Murray requires these officers to answer.[4]  The evidence may support a conclusion that the police officers would have decided to seek a search warrant without the evidence obtained from an illegal search.  It may support the contrary conclusion.  The defendant was denied the opportunity to develop

---

[3] The Middlesex judge's independent error of law is not nullified because a different judge subsequently adopted the Norfolk order without an evidentiary hearing.

[4] It is worth noting that the facts may not be identical to the Norfolk case because the parties there did not litigate the independent source doctrine.  That issue was raised by the judge sua sponte in the order denying the motion to suppress, so the Norfolk case did not include a hearing on this issue.

that record at an evidentiary hearing.  Without an evidentiary hearing and findings of fact, we are speculating.

The defendant does not seek a reversal of the judgments on this issue.  He seeks what the Supreme Court has held is due: an evidentiary hearing on the officers' subjective intent.  The defendant's request for a hearing should have been granted.  We should overrule Pearson I and resume following the Supreme Court's two-prong test in Murray.  Respectfully, I dissent.