COMMONWEALTH *vs.* WILLIAM J. SOMERS, JR. No. 96-P-1003. February 27, 1998. *Jury and Jurors. Practice, Criminal,* Challenge to jurors, Judicial discretion, Argument by prosecutor. *Constitutional Law,* Jury, Search and seizure, Admissions and confessions. *Search and Seizure,* Threshold police inquiry. *Evidence,* Admissions and confessions.

This matter is before us on the defendant's appeal from his convictions of carrying a firearm in a motor vehicle without having a license to do so, fourth offense, G. L. c. 269, § 10(*a*), (*d*), unlawful possession of ammunition, G. L. c. 269, § 10(*h*), operating a motor vehicle so as to endanger, G. L. c. 90, § 24(2), and operating a motor vehicle after his license had been revoked, G. L. c. 90, § 23.[1] On appeal, the defendant contends that the trial judge committed reversible error by denying his challenge for cause of a juror who expressed concerns about his own impartiality, denying his motion to suppress the gun seized from his motor vehicle, and allowing in evidence the Miranda rights form in which the defendant asserted his right to remain silent. The defendant further alleges that the Commonwealth committed reversible error by arguing facts, relating to the discovery of the gun, that had been excluded from evidence during trial. We reverse.

1. *Facts.* The facts, as testified to at trial, are as follows. On June 28, 1995, the defendant was pulled over by a State police officer, Sergeant Hayes, for driving the wrong way on the southbound off-ramp of Route 128. Upon request, the defendant provided Hayes with his registration but explained that he did not have his license with him. Noticing an odor of alcohol, Hayes

---

[1]The last-named conviction was placed on file with the defendant's consent and is not before us. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

asked the defendant if he had been drinking, to which the defendant replied that "he had had a couple." At Hayes's request, the defendant gave his name and social security number and got out of his car.

A second officer, Trooper Garvin, arrived at the scene and, after learning from Hayes that the defendant had been driving negligently and smelled of alcohol, approached the defendant's car with a flashlight in search of signs of alcohol use. Peering in the passenger-side window, Garvin saw an unopened beer bottle on the transmission hump between the front seats. He opened the door, and, as he reached in for the bottle and any further signs of alcohol use, he saw a gun on the floor in front of the front seat. Hayes had meanwhile run a check on the defendant's social security number which revealed that the defendant had provided false information about his identity.

After the gun was found, the defendant informed the officers that his name was really "William Somers." The defendant conceded that he was aware of the gun in his car and volunteered an envelope containing bullets. When Hayes ran a check on the name "William Somers" and the license number given by the defendant, he discovered that the defendant's license had been revoked on March 22, 1994. At this point, the defendant was arrested for possession of a dangerous weapon, possession of ammunition, driving to endanger, and driving after revocation. He was not arrested for operating while under the influence.

Such other facts as are relevant to the defendant's claims have been integrated into our analysis.

2. *Jury empanelment.* The defendant contends that the trial judge's failure to allow his challenge for cause of juror 4-8 requires reversal because it prejudicially diminished his peremptory challenges. We agree.

During the empanelment of the jury, juror 4-8 came forward expressing concerns about his ability to be impartial. The juror explained that his fiancée is an assistant district attorney in a neighboring county and that every night he hears stories from her about what goes on in court. He also admitted that he has "really strong opinions about gun control" in part because many years ago a high school friend of his was shot only thirty feet away from him. The juror stated that if he were the defendant, "I would not want me on a jury." When asked if he could hear the evidence in the case and make his decision based solely on the evidence before him, the juror responded, "I don't know."

Because of the juror's uncertainty about his own ability to be impartial, defense counsel moved to strike this juror for cause. The trial judge, however, disbelieved the juror's statements and suspected instead that the juror just did not want to serve. Consequently, the judge denied the defendant's request. The defendant then exercised his sixth and final peremptory challenge to remove this juror from the panel, and sought an additional challenge in order to remove from the panel one other juror (5-6), who had expressed child care concerns. The trial judge denied the defendant's request for another challenge, and juror 5-6 was empaneled and ultimately deliberated on the defendant's case.

"Article 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution, applied to the States through the due process clause of the Fourteenth Amendment, guarantee . . . the right [of a criminal defendant] to a trial by an impartial jury . . . . The failure to

grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process. *Irvin* v. *Dowd*, 366 U.S. 717, 722 (1961)." *Commonwealth* v. *Susi*, 394 Mass. 784, 786 (1985). Nonetheless, a trial judge is afforded a large degree of discretion in making the initial determination whether a juror is impartial. See *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 460 (1989). In exercising discretion to determine possible juror bias, however, the judge must zealously protect the rights of the accused. *Commonwealth* v. *Vann Long*, 419 Mass. 798, 803 (1995).

Juror 4-8 could not unequivocally state that he would be impartial. Although we give substantial weight to credibility determinations made by the trial judge, it was nonetheless an abuse of discretion in these circumstances for the judge to have discounted completely the impact of the juror's intimate relationship with an assistant district attorney, as well as his own stated concerns of bias. See *Commonwealth* v. *Auguste*, 414 Mass. 51, 57 (1992). See also *Commonwealth* v. *Vann Long*, 419 Mass. at 804 n.7. It was error for the judge to refuse to excuse juror 4-8 for cause. See *Commonwealth* v. *Susi*, 394 Mass. at 789. As a result of the judge's error, the defendant expended his final peremptory challenge and was then forced to accept a juror whom he otherwise would have challenged peremptorily.

It is immaterial that juror 4-8 did not deliberate on the defendant's case. Only if the defendant had not exhausted all of his peremptory challenges would he have had to show that he was prejudiced by the judge's failure to excuse juror 4-8 for cause. See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 83-84 (1978); *Commonwealth* v. *Ascolillo*, 405 Mass. at 459. Here, however, the defendant exhausted his peremptory challenges and has adequately shown that he would have exercised a proper peremptory challenge, had another been available, to exclude one of the sitting jurors. "[T]he erroneous denial of the right to exercise a proper peremptory challenge is reversible error without a showing of prejudice." *Commonwealth* v. *Auguste*, 414 Mass. at 58, quoting from *Commonwealth* v. *Wood*, 389 Mass. 552, 564 (1983). We therefore reverse the defendant's convictions. In the event of retrial, we address certain of the remaining claims of error.

3. *Motion to suppress*. Before trial, the defendant filed a motion to suppress evidence which was denied as to the gun and statements made after arrest but was allowed as to the bullets and statements made before his arrest. The motion judge ruled that the gun was admissible because it would inevitably have been discovered during a lawful inventory search of the defendant's vehicle. The defendant contends that this ruling was erroneous and violated his rights under the Fourth Amendment to the United States Constitution. There was no error.

A police officer has the right to stop an automobile in order to make a threshold inquiry where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime. *Commonwealth* v. *Riggins*, 366 Mass. 81, 86 (1974). The officers need only have had specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the stopping of the defendant's motor vehicle. *Ibid.* Here, given the defendant's erratic driving, Sergeant Hayes was warranted in stopping the defendant's vehicle and conducting the threshold inquiry during which he discerned an odor of alcohol on the defendant's breath and discovered that the defendant was driving without a

license. This in turn warranted the police in ordering that the defendant's car be towed.

Where the Commonwealth can establish, by a preponderance of the evidence, that the information ultimately or inevitably would have been discovered by lawful means, the evidence will be admissible at trial. *Commonwealth* v. *O'Connor*, 406 Mass. 112, 116-117 (1989). The State police inventory policy states that "[a]ny vehicles ordered towed or in the custody of the State Police are to be inventoried and properly recorded." Department of State Police General Order TRF-10 (1992). This policy states that "[t]he interior is inventoried according to the major areas. Starting with the left front (operator) to right front (passenger) and the left rear to right rear." *Id.* at § 4.2.1. Given this policy, we conclude that it is certain, as a practical matter, that the gun on the floor of the defendant's vehicle would have been discovered. See *O'Connor, supra* at 117 n.4 (the test of inevitability should be made on the circumstances existing at the time of the seizure).

4. *Miranda rights form.* The defendant also argues that the admission in evidence, over objection, of his signed Miranda rights form violated his rights guaranteed by art. 12 of the Massachusetts Declaration of Rights and by the Fifth Amendment to the United States Constitution. The defendant claims that the Miranda rights form, which indicated that he wished to assert his right to remain silent, may have suggested to the jury that guilt could be inferred from his failure to offer an explanation for the presence of the gun in the vehicle he was driving. There is merit to this contention.

A defendant's silence after the police have given the warnings mandated by *Miranda* v. *Arizona*, 384 U.S. 436, 467-479 (1966), may not be used against that defendant. *Commonwealth* v. *Waite*, 422 Mass. 792, 797 (1996), citing *Doyle* v. *Ohio*, 426 U.S. 610, 617, 619 (1974). The crux of a *Doyle* violation is the government's use of the defendant's silence against him. *Waite, supra* at 798. Nonetheless, in a few situations evidence of silence is properly admitted because it is not "used against" the accused. *Ibid.*

During a voir dire at trial, the judge found that the defendant had been given Miranda warnings, that he understood them, and that he did not waive them. At trial, however, during the direct examination of its first witness, the Commonwealth offered, and the judge admitted in evidence, the signed Miranda rights form. The Commonwealth argues here that it did not offer this evidence to promote an inference of guilt or to impeach the defendant's story but, rather, offered it in order to show that the defendant was properly booked and warned.

In view of the fact that the Commonwealth had already elicited testimony from this witness to show that the defendant had been advised of his rights, that there had been no suggestion that the officers had failed to read the defendant his Miranda rights or that the defendant's statements were in any way involuntary, and that the defendant in no way opened the door to the discussion of his having invoked the right to remain silent, the Commonwealth's argument fails. Contrast *Commonwealth* v. *Waite*, 422 Mass. at 799. Where evidence of the defendant's claim of his Fifth Amendment rights is presented to the jury in order to prejudice the defendant for exercising these rights, reversible error will be found. Contrast *Commonwealth* v. *Habarek*, 402 Mass. 105, 110 (1988) (it was not error to admit evidence so as not to leave the jury wondering why the interview ended so abruptly). If this evidence

was offered to show that the defendant was properly booked and warned, it was cumulative and not relevant to any issue raised at trial. Its admission in evidence was error.

5. *Prosecutorial misconduct.* The defendant contends that the prosecutor committed reversible error when he argued facts relating to the discovery of the gun that had been excluded from evidence during trial. Trusting that closing argument at any retrial will not refer to excluded evidence, we do not reach this issue.

> *Judgments reversed.*
> *Verdicts set aside.*
> *Order denying motion to*
> *suppress affirmed.*

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Brian A. Wilson,* Assistant District Attorney, for the Commonwealth.