HENRY, J.
*6 After a jury trial in Superior Court, the defendant, Radhames Gonzalez, was convicted *721 of possession of cocaine with *7 intent to distribute, carrying a firearm without a license, possession of ammunition without a firearm identification card, possession of a large capacity feeding device, and possession of a large capacity weapon during the commission of a felony.[1] The defendant argues that (1) his motion to suppress should have been allowed because the information supplied by a confidential informant (CI) did not justify the investigatory stop of his motor vehicle; and (2) the admission in evidence of a substitute chemist's testimony deprived the defendant of his right to "confront" the witness. We affirm.
Background. We set forth the facts as found by the motion judge, supplemented where necessary with uncontroverted evidence drawn from the record of the suppression hearing. See Commonwealth v. Watson, 430 Mass. 725, 726 n.5, 723 N.E.2d 501 (2000).
Sergeant William West of the Billerica police department testified that he had been a patrol sergeant for two years, and that he had formerly been a detective in the criminal bureau for sixteen years. As a detective, he had investigated all types of crimes including narcotics offenses and had worked with informants "no less than a hundred times." In June, 2013, about one year after he had become a sergeant, West was contacted by a CI with whom West had worked on more than one occasion when he was a detective.
On this occasion, the CI provided a description of a man who went by the name of "Eddie," later identified as the defendant, who was dealing heroin and cocaine in and around the Gaelic Club (club) in Lowell. The CI described the defendant as a Dominican male who drove a white Buick Rendezvous CXL sport utility vehicle bearing license plate 676 NB4. The CI indicated that on Friday nights the defendant used the club as a base of operation and that the CI personally observed the defendant make cocaine sales in the club's bathroom. The CI also indicated that the defendant would receive telephone calls and travel to individuals' homes to sell drugs. The CI also told West that the defendant usually carried a firearm and the CI believed the defendant did not have a valid driver's license.
Because West was no longer involved in narcotics investigations and because the club was in Lowell, not Billerica, he passed the CI's tip and contact number to Sergeant Noone of the Lowell *8 police department. West explained to Noone that the CI was an informant who had been "signed up by Billerica" and had been reliable in the past, including having given information that led to arrests and seizures. Noone assigned the matter to Lowell police Detective Rafael Rivera. When Rivera spoke by phone with the CI, the CI repeated what he had disclosed to West and that he had seen the defendant in the club only a "couple of days before," in possession of drugs and his gun. Rivera ran the license plate number the CI had given him and the records showed that the vehicle was registered to Kennedy Ruiz-Mejia.[2]
On Friday, June 28, 2013, at about 7:25 P.M. , Rivera and three other undercover officers, in four separate vehicles, set up surveillance around the club. Rivera saw a vehicle matching the make, model, license plate, and color supplied by the CI. After a *722 few minutes, a man matching the description of "Eddie" exited the club, got into the vehicle, and drove away. When the vehicle turned into a gasoline station, Lowell police Detective Michael Kandrotas pulled in behind it, activating the concealed lights and siren on his unmarked cruiser.
Kandrotas exited his vehicle and, as he approached, observed the driver make a quick movement to his right, as if to toss something into the back seat. Because the defendant had been reported to carry a firearm, Kandrotas had the defendant exit the vehicle. Rivera joined Kandrotas and recognized the defendant as someone he knew from prior narcotics investigations.
Rivera confirmed through dispatch that the defendant did not have a current driver's license. The defendant was placed under arrest for operating a vehicle without a license. Rivera searched the defendant and found $5,100 on his person. The defendant was transported to the police station. During booking, it was determined that the defendant had an alias of Eddie Mambru.
Because the defendant's vehicle was blocking a gasoline pump, and the police were going to search it, the police moved it across the street to a school parking lot after the defendant was arrested. The Lowell inventory policy, which was introduced at the motion hearing, provides for the inventory and towing of a vehicle that was, or is, being used in the commission of a crime. When police opened the rear door, they observed a loaded .40 caliber semiautomatic handgun poorly concealed in a sock on the floor. In a *9 second sock, police recovered twenty-seven bags, each containing a powder later confirmed to be cocaine.
The motion judge found that the police had conducted an investigatory stop based on information supplied by the CI. The judge recognized that in such circumstances, the CI's information must establish both the reliability and basis of knowledge prongs set forth under the Aguilar-Spinelli test.[3] The judge reasoned that " '[b]ecause the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible' ... [and] independent police corroboration may 'make up for deficiencies in one or both of these factors.' " Commonwealth v. Pinto, 476 Mass. 361, 364, 67 N.E.3d 713 (2017), quoting from Commonwealth v. Depina, 456 Mass. 238, 243, 922 N.E.2d 778 (2010).
Applying this standard, the judge ruled that the CI's basis of knowledge was self-evident from the tip and founded on personal observation. On the veracity prong, according to West, "The information [the CI] provided allowed [West] to seize various types of narcotics, make drug seizures and drug arrests, as well as seizing money, the proceeds of drug profits." Through cross-examination, defense counsel elicited that individuals who make controlled buys are considered to be "informant[s]"; that "if [a] person had, in fact, made a series of purchases on behalf of the Billerica [p]olice [d]epartment, [West] could honestly say that that individual had provided [West] with information that if it did lead to arrest, to arrest and seizure ..."; and that, specifically, this CI had previously made *723 controlled buys for the Billerica police department. The Commonwealth did not ask West on redirect examination whether the CI previously had been a tipster and not merely a controlled buyer. The judge specifically found: "I understand [West's] testimony to mean that the CI supplied substantive information as well as helping with controlled buys." The judge also found that knowledge of the CI's past track record of reliability with Billerica, which was conveyed to Lowell, was sufficient to "satisf[y] the veracity test." *10 Discussion. 1. Motion to suppress. a. The stop. "In reviewing a denial of a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error, but conduct an independent review of the judge's ultimate findings and conclusions of law." Commonwealth v. Washington, 449 Mass. 476, 480, 869 N.E.2d 605 (2007).
Here, because there is no live dispute regarding the CI's basis of knowledge, given the CI's personal observations of the defendant in possession of drugs and a gun only days prior to the tip, we focus on the evidence of the CI's veracity. The motion judge gave West's testimony regarding the CI's prior track record its plain and ordinary meaning, namely that on more than one previous occasion the CI had directly provided material information regarding violations of the law and, further, that the CI provided "substantive information." The judge's finding of fact comports with the language West used, the testimony that the informant had been reliable in the past, and the common situation presented in police work in which a CI provides material information regarding criminal violations and is then engaged to execute a controlled buy.[4] See, e.g., Commonwealth v. Perez-Baez, 410 Mass. 43, 44-46, 570 N.E.2d 1026 (1991) (recitation that informant had "provided information" previously that led to arrests and seizure of cocaine sufficiently established informant's veracity); Commonwealth v. Mendes, 463 Mass. 353, 365, 974 N.E.2d 606 (2012) (CI provided information and made controlled buy); Commonwealth v. Baldasaro, 62 Mass. App. Ct. 925, 926, 818 N.E.2d 189 (2004) (same); Commonwealth v. Velez, 77 Mass. App. Ct. 270, 273, 929 N.E.2d 984 (2010) (same); Commonwealth v. Lima, 80 Mass. App. Ct. 114, 119 n.5, 951 N.E.2d 952 (2011) (same); Commonwealth v. Perez, 90 Mass. App. Ct. 548, 554, 60 N.E.3d 1188 (2016) (same).
The defendant contends that there was a possible alternative interpretation of West's testimony: that in the past the CI could have been only a controlled buyer who had not provided information, *11 which would be insufficient to establish the CI's veracity. See Commonwealth v. Carrasquiello, 45 Mass. App. Ct. 772, 775-776, 702 N.E.2d 384 (1998) (differentiating between confidential informants as tipsters and controlled buyers for purposes of veracity).[5] This argument is insufficient to *724 show clear error in the motion judge's findings of fact.
First, on a motion to suppress, "[q]uestions of credibility are the province of the motion judge who had the opportunity to observe the witnesses." Commonwealth v. Tremblay, 460 Mass. 199, 205, 950 N.E.2d 421 (2011). Second, and more importantly, that the Commonwealth or the motion judge might have asked what seems, possibly only in hindsight, an obvious follow-up question to confirm that the CI previously had been a tipster, rather than merely a controlled buyer, does not allow us to reverse. Where the judge's finding "is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the [finder] of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203, 492 N.E.2d 1164 (1986), quoting from Anderson v. Bessemer City, 470 U.S. 564, 573-574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). See Commonwealth v. Carr, 458 Mass. 295, 303, 936 N.E.2d 883 (2010) ; Commonwealth v. Gordon, 87 Mass. App. Ct. 322, 327, 29 N.E.3d 856 (2015).
Moreover, that the defense interpretation of West's testimony may be possible does not make it probable or an inference the motion judge must draw. A court considers the application for a search warrant, or here whether there was reasonable suspicion to conduct a stop, "in an ordinary, commonsense manner without hypertechnical analysis." Perez-Baez, 410 Mass. at 46, 570 N.E.2d 1026, quoting from Commonwealth v. Melendez, 407 Mass. 53, 60, 551 N.E.2d 514 (1990) (Greaney, J., dissenting). See Commonwealth v. Blake, 413 Mass. 823, 827, 604 N.E.2d 1289 (1992) (search warrant affidavits should be "read as a whole, not parsed, severed, and subjected to hypercritical analysis"). "The standard of reasonable suspicion[, which is lower than the standard of probable cause,] does not require absolute certainty, but only 'sufficient probability,' 'the sort of "common-sense conclusio[n] about human behavior" upon which "practical *12 people"-including government officials-are entitled to rely.' " Commonwealth v. Buccella, 434 Mass. 473, 486, 751 N.E.2d 373 (2001), quoting from New Jersey v. T.L.O., 469 U.S. 325, 346, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).[6]
b. The search of the vehicle. Similarly unavailing is the defendant's claim that the search of the vehicle was unreasonable. After the defendant was arrested, because his vehicle was blocking the pumps at a gasoline station that was open for business, the police moved the vehicle across the street. Regardless of how the police described the ensuing search, the incriminating objects found during the *725 search would have been discovered during the inevitable inventory search conducted before police had the vehicle towed. See, e.g., Commonwealth v. Miller, 366 Mass. 387, 389, 318 N.E.2d 909 (1974) (finding search constitutional even though "the officers did not completely and correctly articulate their grounds," where "from an objective standpoint probable cause existed"); Commonwealth v. Somers, 44 Mass. App. Ct. 920, 922-923, 691 N.E.2d 225 (1998) (police discovery during automobile stop that defendant had no license warranted order that car be towed); Commonwealth v. Bienvenu, 63 Mass. App. Ct. 632, 634-635, 828 N.E.2d 543 (2005) (after police stopped car for safety infraction, subsequent tow and inventory search were proper because "neither defendant could lawfully drive the car").
2. Testimony of substitute chemist. The defendant argues that testimony of a substitute chemist regarding the makeup of the substance seized from the defendant's vehicle violated his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights to confront and meet face to face the witnesses against him, and that the Commonwealth did not sufficiently prove the unavailability of the *13 original chemist.[7]
Testimony by an expert where he or she "draws upon testing conducted and results reached by other analysts[ ] who do not testify ... is permissible provided that the testifying analyst 'reviewed the nontestifying analyst's work, ... conducted an independent evaluation of the data,' and 'then expressed [his or] her own opinion, and did not merely act as a conduit for the opinions of others.' " Commonwealth v. Jones, 472 Mass. 707, 715, 37 N.E.3d 589 (2015), quoting from Commonwealth v. Greineder, 464 Mass. 580, 595, 984 N.E.2d 804 (2013). See Greineder, supra at 603, 984 N.E.2d 804 (no violation of Sixth Amendment or art. 12, even where testifying analyst based her opinion on test results of nontestifying analyst that were not admitted in evidence). Unavailability is not a prerequisite to calling a substitute chemist, provided the substitute chemist can be cross-examined on how he or she reached his or her opinion. See id. at 594-599, 984 N.E.2d 804.
The Commonwealth introduced the testimony of Paul Eyerly, a chemist with the State police drug unit in Sudbury, who testified as to his own independent opinion of the composition of the substances in question based on tests performed and results obtained by the original chemist. The defendant cross-examined Eyerly regarding the basis on which he formed his opinion, the testing procedures used, and their susceptibility to human error. We discern no error or any violation of the defendant's right to confront the witnesses against him under the United States Constitution or the Massachusetts Declaration of Rights.
Judgments affirmed.

The defendant then waived his right to a jury and was tried before the judge on sentence enhancements connected with two of the firearms charges. A motion for a required finding of not guilty was allowed as to both enhancements.

After the defendant was arrested, Rivera learned that Ruiz-Mejia had passed away in 2011.

Under the Aguilar-Spinelli test, "[t]o establish the reliability of the information under art. 14 [of the Massachusetts Declaration of Rights], 'the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test).' " Commonwealth v. Anderson, 461 Mass. 616, 622, 963 N.E.2d 704, cert. denied, 568 U.S. 946, 133 S.Ct. 433, 184 L.Ed.2d 265 (2012), quoting from Commonwealth v. Mubdi, 456 Mass. 385, 395-396, 923 N.E.2d 1004 (2010). See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

We also note that the CI knew specifically to telephone West to convey information regarding an individual's illegal drug sales in this case and that in anticipation of that conversation he had obviously noted the make, model, registration number, and color of that individual's vehicle, together with his method of operation, which suggests at least a likelihood that this was not his first tip. Additionally, we note that the detectives did corroborate several pieces of information from the CI before the stop, including the make, model, color, and license plate number of the vehicle that the defendant would be driving. However, corroboration of innocent details "only slightly" enhances the CI's reliability and is insufficient on its own to satisfy the veracity prong. See Commonwealth v. Lyons, 409 Mass. 16, 21, 564 N.E.2d 390 (1990).

Carrasquiello involved the question of probable cause for a search warrant for entry into a home, whereas this case involves the lesser standard of reasonable suspicion, and a Terry stop on the street. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

At oral argument, the defendant added that the Lowell police could not rely on the track record of the CI established with the Billerica police department to establish the CI's reliability because they did not know the details of that track record and were not working collaboratively on the investigation with Billerica, citing Commonwealth v. Hawkins, 361 Mass. 384, 386-387, 280 N.E.2d 665 (1972) (collective knowledge doctrine did not apply because officers who seized bonds during search for drugs within the defendant's apartment were neither aware of theft of bonds nor working in concert with officers who had knowledge of the stolen bonds). Generally, we will not consider arguments not raised in a party's brief. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, the argument has no merit. Here, the Lowell police were informed that the CI was reliable by the Billerica police, and "[a] law enforcement officer who provides information is presumed credible." Commonwealth v. Watson, 36 Mass. App. Ct. 252, 253 n.1, 629 N.E.2d 1341 (1994).

At trial, the prosecutor represented that the original chemist had left the laboratory and it was unknown whether she was still working as a chemist for the Commonwealth.