NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-454

COMMONWEALTH

vs.

JOSE PENA MARIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from an order of a District Court judge allowing the defendant's motion to suppress. The Commonwealth argues that the judge erred in allowing the motion because the patfrisk was justified by reasonable suspicion that the defendant was armed and dangerous. We affirm.

Background. We recite the facts as found by the motion judge, "supplemented by additional undisputed facts where they do not detract from the judge's ultimate findings."[1]

---

[1] In his written findings, the judge noted that he "greatly credits" the testimony of Holyoke police Sergeant Dustin Summers, who was the only witness to testify at the suppression hearing.

Commonwealth v. Kaplan, 97 Mass. App. Ct. 540, 541 n.3 (2020), quoting Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015).

On March 17, 2023, around 1:47 A.M., members of the Holyoke police department responded to a ShotSpotter[2] activation at 275 Main Street in Holyoke. Approximately a minute and a half after receiving the activation, two officers arrived at the scene.[3] They were joined shortly thereafter by Sergeant Summers. When Sergeant Summers "approached the area where the shot came from," there were approximately fifteen to twenty people "standing around" on the sidewalk outside of a nightclub at 275 Main Street.

Sergeant Joseph Zurheide "radioed to" Sergeant Summers and asked him to follow a vehicle that "left the scene" and obtain the registration information. Sergeant Zurheide informed Sergeant Summers that the vehicle had been parked on Main Street, but that he "made eye contact with the operator"[4] who

---

[2] "ShotSpotter" is "a system that identifies firearm discharges by sound and directs officers to the general location of the shots." Commonwealth v. Evelyn, 485 Mass. 691, 694 (2020).

[3] Sergeant Summers agreed that a ShotSpotter activation is not instantly transmitted to the police department and that it takes between thirty and ninety seconds to determine whether a detected noise was a gunshot.

[4] The defendant was not the operator of the vehicle.

2

then "accelerated quickly into traffic to leave the area."[5] Approximately twenty seconds later, Sergeant Summers saw the vehicle, which was "the only vehicle leaving the area at that time that [he] could see." As Sergeant Summers followed the vehicle, he had to travel "[f]aster than the speed for the area" to catch up to it, and as he got closer, he noticed "a blast from the exhaust . . . indicating that the vehicle was accelerating."[6] This struck him as "unusual" for the area because people generally "brake and slow down" due to a curve in the road. Sergeant Summers continued to follow the vehicle as it turned off Main Street.

At some point, the vehicle pulled over to the side of the road, partially blocking an intersection. The defendant got out of the vehicle from the front passenger seat and walked down the street. Sergeant Summers approached the defendant, and asked, "Hey, can I talk to you?". The defendant turned towards Sergeant Summers, took a step backward onto the sidewalk, and stared at him. The defendant told Sergeant Summers, "I don't speak English." Sergeant Summers asked the defendant if he had

---

[5] On cross-examination, Sergeant Summers testified that Sergeant Zurheide told him the car accelerated "[i]nto the travel lane."

[6] Sergeant Summers testified that the speed limit in the area was twenty-five miles per hour, but he did not testify that the vehicle was exceeding that amount.

any weapons, and the defendant did not respond.  The defendant did not make any furtive movements, and his hands remained at his sides.  Sergeant Summers testified that he was nonetheless "still nervous [due to] the defendant stepping back onto the sidewalk and staring at [him]."  Sergeant Summers subsequently conducted a patfrisk of the defendant and recovered a firearm from his waistband.

Discussion.  "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of law" (citation and quotation omitted).  Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing."  Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).  However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found."  Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

The Commonwealth contends that, based on the facts found by the motion judge and the credited testimony, there was reasonable suspicion to believe that the defendant was armed and dangerous.  We disagree.

4

"A patfrisk is permissible only where an officer has reasonable suspicion that the stopped individual may be armed and dangerous." Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 744 (2021), cert. denied, 143 S. Ct. 135 (2022). "In assessing whether an officer has reasonable suspicion to justify a patfrisk, we ask whether a reasonably prudent [person] in the [officer's] position would be warranted in the belief that the safety of the police or that of other persons was in danger" (quotations and citations omitted). Id. "An innocent explanation for an individual's actions 'does not remove [those actions] from consideration in the reasonable suspicion analysis.'" Id., quoting Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007).

The Commonwealth points to several factors in support of finding reasonable suspicion in this case, including (1) the ShotSpotter activation at 275 Main Street, (2) Sergeant Summers's testimony that he had previously responded to the area for reports of shots fired and violent crime, (3) the defendant's presence in the only vehicle observed to be leaving the area of the shooting, (4) the vehicle's acceleration after the driver made eye contact with Sergeant Zurheide and after Sergeant Summers began following it, (5) the defendant's stepping back onto the sidewalk and staring at Sergeant Summers,

5

and (6) the defendant's failure to respond after Sergeant Summers asked him if he had a weapon.

Although the above factors provide evidence that the defendant was in the only vehicle leaving the area of a shooting, see Commonwealth v. Ford, 100 Mass. App. Ct. 712, 717 (2022), the totality of facts were inadequate to provide reasonable suspicion.  There was no particular reason to believe that the shooter was in the vehicle.  The defendant and the driver were not the only people in the vicinity of the shooting, as there were approximately fifteen to twenty people standing outside at the same location as the ShotSpotter activation.[7] Contrast Commonwealth v. Privette, 491 Mass. 501, 521 (2023) (defendant only person in vicinity of reported robbery); Ford, supra at 714 (defendant only person officer saw in area after several ShotSpotter alerts).  The vehicle had not exceeded the speed limit or committed any traffic violations.  Further, the defendant's failure to respond to Sergeant Summers' inquiry concerning weapons adds little to the analysis as he had just informed Sergeant Summers that he did not speak English.

---

[7] Sergeant Summers was aware that the car was parked on Main Street before it "left the area," but it is unclear from his testimony if the car was within the ShotSpotter radius.  By contrast, the ShotSpotter activation location was 275 Main Street, precisely where the fifteen to twenty people were standing on the sidewalk outside the open nightclub.

We acknowledge that the police officers were responding to a ShotSpotter activation and confronted with a potentially dangerous situation in real time.  We further note that reasonable suspicion is lower than the standard of probable cause, and requires only "the sort of common-sense conclusio[n] about human behavior upon which practical people -- including government officials -- are entitled to rely" (quotations and citations omitted).  Commonwealth v. Gonzalez, 93 Mass. App. Ct. 6, 11-12 (2018).  Nevertheless, the Commonwealth did not present adequate evidence to justify the patfrisk.  The defendant stepped back onto the sidewalk but, as the motion judge found, he did not attempt to walk or run away from Sergeant Summers.  Contrast Commonwealth v. Matta, 483 Mass. 357, 367 (2019) (officer's concern heightened when defendant "began walking towards bushes, not on the sidewalk where one would expect a person to walk" and began to run away holding his waistband).  The defendant did not make any furtive gestures or movements that were consistent with carrying a firearm, and his hands remained visible throughout the encounter.  See Commonwealth v. Powell, 102 Mass. App. Ct. 755, 762-763 (2023) (defendant "obeyed officer directives and made no suspicious movements").  Contrast Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 11 (2023) (repeatedly glancing over shoulder toward police station added to reasonable suspicion); Commonwealth v. Evelyn, 485

7

Mass. 691, 708 (2020) (thirteen minutes after shooting, officers observed defendant "holding in his pocket an object that was consistent with the size of a firearm," with "his hands pressed against his body" and he "turn[ed] his body away from the officers"); Commonwealth v. Monell, 99 Mass. App. Ct. 487, 490-491 (2021) (facts that defendant "'froze' while acting as if he was trying to conceal his right hand," together with presence of gun holster, time of night, and earlier fatal shooting sufficient to establish reasonable suspicion). Accordingly, we discern no error in the judge's conclusion that there was no reasonable suspicion to conduct a patfrisk of the defendant.[8]

Order allowing motion to
 suppress affirmed.

By the Court (Neyman,
 Ditkoff & Wood, JJ.[9]),

Clerk

Entered: May 8, 2025.

---

[8] The Commonwealth asks us, in the alternative, to remand the matter for additional findings of fact. There is a measure of persuasiveness to this request in that the testimony of the witness contained some ambiguities, and more detailed findings of fact could have clarified the record before us. Nonetheless, after reviewing the judge's findings and the entire record, we conclude that the judge's decision was supported by the evidence, and we cannot say that his ultimate determination was incorrect as a mater of law.

[9] The panelists are listed in order of seniority.