NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-646

COMMONWEALTH

vs.

ALMILKAL M. RUIZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from a District Court judge's order allowing the defendant's motion to suppress evidence obtained from a detention and patfrisk following a traffic stop. The Commonwealth argues that the judge erred in allowing the motion because the patfrisk was justified by reasonable suspicion that the defendant was armed and dangerous. We affirm.

Background. We recite the facts as found by the motion judge, "supplemented by additional undisputed facts where they do not detract from the judge's ultimate findings." Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015). On April 5, 2024, Sergeant Gary Hagerty was on patrol around Rockaway

Street in Lynn.  This is considered a high crime area of Lynn and "an area that police were focused on as a result of an increase in gang activity in the approximately four months prior to April, 2024," which included a "triple shooting" and "double murder" in December 2023.  That evening, Sergeant Hagerty was on patrol in an unmarked vehicle when he saw a motor vehicle travel through a stop sign without slowing or stopping.  He checked the license plate, which "came back to a Black Infiniti, but the vehicle was a Subaru."  The license plate was associated with a vehicle belonging to Brian Khampharasavath (Khampharasavath).  Sergeant Hagerty knew Khampharasavath from a prior firearms-related arrest and his association with gangs in the area.  Sergeant Hagerty radioed for marked units to assist in making a motor vehicle stop.  Sergeant Hagerty "put the blue lights on" and performed a motor vehicle stop.  Of note, the vehicle stopped in the middle of the road and not close to the curb.

   As Sergeant Hagerty executed the stop, he saw the passenger door open and the passenger, later identified as the defendant, get out of the Subaru.[1]  After the defendant got out of the vehicle, the defendant was ordered to remain at the vehicle by the police, which he did.  Sergeant Hagerty noted that the

---

[1] There was no exit order given to the defendant as he had already stepped out of the vehicle after the stop and as the police were approaching.

defendant's exit from the vehicle seemed "quicker" than a normal exit. The defendant's quick exit heightened Sergeant Hagerty's concerns because, based on his training and experience, people trying to get out of motor vehicles quickly after being stopped by police do so because of what is in the car or on their person. As the defendant walked back to the vehicle, Sergeant Hagerty "observed a satchel-type bag around his body." The defendant's wearing of this bag, in the present circumstances, heightened Sergeant Hagerty's concerns because "he had made at least [ten] arrests wherein persons were carrying firearms in this type of bag." Accordingly, Sergeant Hagerty patfrisked the defendant's bag but did not find anything therein. Sergeant Hagerty then patfrisked the defendant's waist and felt what turned out to be a black nine millimeter firearm with no serial number.

Upon locating the loaded firearm, Sergeant Hagerty testified that he "demanded" the defendant produce a license to carry a firearm. In response the defendant said that he was in the "process of getting one." The defendant was placed under arrest.

Discussion. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the

3

judge's] ultimate findings and conclusions of law" (quotation and citation omitted).  Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing."  Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).  However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found."  Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

The Commonwealth contends that the totality of the facts found and credited by the motion judge provided the officers with reasonable suspicion that the defendant was armed and dangerous, justifying the detention and patfrisk of the defendant.  We disagree.

"A patfrisk is permissible only where an officer has reasonable suspicion that the stopped individual may be armed and dangerous."  Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 744 (2021), cert. denied, 143 S. Ct. 135 (2022).  "In assessing whether an officer has reasonable suspicion to justify a patfrisk, we ask whether a reasonably prudent [person] in the [officer's] position would be warranted in the belief that the safety of the police or that of other persons was in danger"

4

(quotations and citation omitted).  Id.  "An innocent explanation for an individual's actions 'does not remove [those actions] from consideration in the reasonable suspicion analysis.'"  Id., quoting Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007).

The Commonwealth urges us to reverse the allowance of the defendant's motion to suppress because the totality of circumstances showed that (1) Sergeant Hagerty was patrolling a high crime area; (2) tensions and gang violence were heightened; (3) the car from which the defendant exited bore a license plate which was registered to a person with known gang associations and a prior firearms-related arrest; (4) the vehicle carrying the defendant and another person stopped in the middle of the road rather than at the curb; (5) the defendant made a "quicker" than normal exit from the vehicle; and (6) Sergeant Hagerty saw the defendant wearing a satchel-type bag from which Sergeant Hagerty had recovered firearms on prior occasions.

Although the above factors provide evidence of a heightened need for caution and perhaps reasonable suspicion that the defendant may be dangerous, the totality of the facts did not provide reasonable suspicion that the defendant was also armed. See Sweeting-Bailey, 488 Mass. at 744.  There was no particular reason to believe that the defendant was carrying a weapon.

5

Indeed, our case law is clear that merely exiting a vehicle during a police stop does not support a finding of reasonable suspicion.  Commonwealth v. Torres, 424 Mass. 153, 159 (1997) ("It is not unnatural for either the driver or the passenger in an automobile [or both] to get out of the vehicle to meet a police officer who has signalled the vehicle over to the side of the road").  Moreover, Sergeant Hagerty's initial concerns were based on the driver's traffic violation, the record of the driver of the vehicle, and his associations with gangs, not the defendant's identity.  See id. at 157.

We acknowledge that the police officers were confronted with a potentially dangerous situation in real time and we are loathe to say that Sergeant Hagerty acted unreasonably in light of the factors delineated above and his training and experience.[2] We further note that reasonable suspicion is lower than the standard of probable cause and requires only "the sort of common-sense conclusio[n] about human behavior upon which

---

[2] We acknowledge the difficult result reached here. Although "[t]he touchstone of search and seizure law is reasonableness," Commonwealth v. Harris, 93 Mass. App. Ct. 56, 63 (2018), and "police officers need not gamble with their personal safety when there are legitimate safety concerns to justify [their actions]" (quotations and citation omitted), Commonwealth v. Demos D., 497 Mass. 78, 87 (2026), our jurisprudence requires reasonable suspicion that a defendant is both dangerous and "armed" in order to justify a patfrisk. Sweeting-Bailey, 488 Mass. at 744.

practical people -- including government officials -- are entitled to rely" (quotations and citation omitted). Commonwealth v. Gonzalez, 93 Mass. App. Ct. 6, 11-12 (2018). Nevertheless, the Commonwealth did not present adequate evidence to justify the patfrisk. The defendant did get out of his car rapidly but complied with officer instructions to return to the vehicle. The defendant did not make any furtive gestures or movements that were consistent with carrying a firearm. See Commonwealth v. Powell, 102 Mass. App. Ct. 755, 762-763 (2023). The defendant's use of a satchel-type bag is also not enough to provide reasonable suspicion that he was armed; the defendant made no attempt to conceal or hide the bag justifying "reasonable suspicion that the bag contained an illegal firearm or other contraband" (citation omitted). Commonwealth v. Johnson-Rivera, 104 Mass. App. Ct. 533, 537 (2024). Moreover, we only consider that an area is high crime if the "high crime" nature of the area has a "direct connection with the specific location and activity being investigated." Commonwealth v. Torres-Pagan, 484 Mass. 34, 41 (2020). Here, the police were investigating a civil motor vehicle infraction, and Khampharasavath's associations with gang activity dated years back. Accordingly, we discern no error in the judge's

7

conclusion that there was no reasonable suspicion to conduct a patfrisk of the defendant.

Order allowing motion to
  suppress affirmed.

By the Court (Vuono, Neyman &
  Sacks, JJ.[3]),

*Paul Little*

Clerk

Entered:  February 17, 2026.

---

[3] The panelists are listed in order of seniority.